IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Maria Ledbetter, ) | Civil Action No. 2:14-100-TMC-MGB |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | **REPORT AND RECOMMENDATION** |
| Carolyn W. Colvin, ) | **OF MAGISTRATE JUDGE** |
| Acting Commissioner of Social ) | |
| Security, ) | |
| ) | |
| Defendant. ) | |
| _____ ) | |

This case is before the Court for a Report and Recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

The Plaintiff, Maria Ledbetter, brought this action pursuant to Section 205(g) of the Social Security Act, as amended, (42 U.S.C. Section 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security Administration regarding her claim for disability insurance benefits ("DIB") under Title II of the Social Security Act.

## RELEVANT FACTS AND ADMINISTRATIVE PROCEEDINGS

Plaintiff was 35 years old on her alleged disability onset date of July 25, 2005. (R. at 15.) Plaintiff claims disability due to degenerative disc disease, sciatica, nerve pain, and depression. (R. at 15, 28.) Plaintiff finished the ninth grade and has past relevant work as a knitting machine operator. (R. at 38-39, 28.)

Plaintiff filed an application for DIB on May 6, 2011. (R. at 13.) After her application was denied initially and on reconsideration, a hearing was held before an Administrative Law Judge (ALJ) on July 18, 2012. (R. at 13.) In a decision dated September 13, 2012, the ALJ found that Plaintiff was not disabled. (R. at 13-29.) The Appeals Council denied Plaintiff's request for review,

---

[1] A Report and Recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

(R. at 1-6), making the ALJ's decision the Commissioner's final decision for purposes of judicial review.

In making the determination that the Plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the ALJ:

> (1) The claimant last met the insured status requirements of the Social Security Act on December 31, 2010.
>
> (2) The claimant did not engage in substantial gainful activity during the period from her alleged onset date of July 25, 2005 through her date last insured of December 31, 2010 (20 CFR 404.1571 *et seq.*).
>
> (3) Through the date last insured, the claimant had the following severe impairments: degenerative disc disease, sciatica, nerve pain and depression (20 CFR 404.1520(c)).
>
> (4) Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> (5) After careful consideration of the entire record, I find that, through the date last insured, the claimant had the RFC to perform light work as defined in 20 CFR 404.1567(b) except for the following additional limitations: never climb ladders/ropes/scaffolds, occasionally bend, stoop, balance, crouch or crawl; avoid concentrated exposure to hazards; and a limitation to simple, routine, repetitive tasks with no ongoing contact with the public.
>
> (6) Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).
>
> (7) The claimant was born on November 3, 1969 and was 41 years old, which is defined as a younger individual age 18-49, on the date last insured (20 CFR 404.1563).
>
> (8) The claimant has a limited education and is able to communicate in English (20 CFR 404.1564).
>
> (9) Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

> (10) Through the date last insured, considering the claimant's age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1569 and 404.1569(a)).
>
> (11) The claimant was not under a disability, as defined in the Social Security Act, at any time from July 25, 2005, the alleged onset date, through December 31, 2010, the date last insured (20 CFR 404.1520(g)).

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a "disability." 42 U.S.C. § 423(a). "Disability" is defined in the Act as the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than" twelve months. See 42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, the Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions. An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Administration's official Listing of Impairments found at 20 C.F.R. Part 404, Subpart P, Appendix 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents her from doing substantial gainful employment. See 20 C.F.R. § 404.1520. If an individual is found not disabled at any step, further inquiry is unnecessary. See 20 C.F.R. § 404.1520(a)(4); see also Hall v. Harris, 658 F.2d 260 (4th Cir. 1981).

A plaintiff is not disabled within the meaning of the Act if she can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work. See SSR 82-62, 1982 WL 31386, at *3. The plaintiff bears the burden of establishing her inability to work within the meaning of the Act. 42 U.S.C. § 423(d)(5). She must make a prima facie showing

of disability by showing that she is unable to return to her past relevant work. Grant v. Schweiker, 699 F.2d 189, 191 (4th Cir. 1983); see also Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

Once an individual has established an inability to return to her past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy. See Grant, 699 F.2d at 191. The Commissioner may carry the burden of demonstrating the existence of jobs available in the national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. See id. at 191-92.

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner "are supported by substantial evidence and whether the correct law was applied." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); see also Richardson v. Perales, 402 U.S. 389 (1971); 42 U.S.C. § 405(g). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. Pyles v. Bowen, 849 F.2d 846, 848 (4th Cir. 1988) (citing 42 U.S.C. § 405(g); Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "substantial evidence" is defined as:

> such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Substantial evidence consists of more than a mere scintilla of evidence but may be less than a preponderance.

Smith v. Chater, 99 F.3d 635, 637-38 (4th Cir. 1996) (internal quotation marks and citations omitted).

Thus, it is the duty of this Court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that the Commissioner's conclusion is rational. Thomas v. Celebrezze, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

## **DISCUSSION**

The Plaintiff contends that the ALJ erred in failing to find her disabled. Specifically, Plaintiff contends that the ALJ "improperly gave little weight" to the opinions of two treating physicians and

that the Appeals Council failed to weigh the "new and material evidence" submitted to it, where "that evidence might also have affected the findings of the fact-finder." (Dkt. No. 15 at 2-3 of 38.)

### A.     **Residual Functional Capacity**

In the instant case, the ALJ gave "little weight" to the opinions of Dr. Flandry, Plaintiff's treating neurosurgeon, and Dr. Madison, Plaintiff's family practice physician. (See R. at 25-27.) In a statement dated May 21, 2012, Dr. Flandry noted that he first saw Plaintiff in 2005, and she "had an MRI that showed annular tears and degenerative changes at L4-5 and L5-S1. She had an asymmetrical bulge of a lower disc at L5-S1 causing possible decompression of nerve root at that level, and she also had possible L5 compression from the left side." (R. at 253.) He stated that in July of 2005, he "performed surgery on [Plaintiff's] lumbar spine including removing the discs and stabilizing with fusion." (R. at 253.) Dr. Flandry further stated,

> Her initial post operative course was not unusual in that she slowly got better up to 6 months, and then her improvement plateaued and then dropped down from a good recovery. She continued to complain of significant low back pain that was interfering with her daily life. We tried physical therapy and she was compliant with that, but it tended to aggravate more than help. She was treated with antidepressant medications and narcotic pain medications. She responded to those, but in the absence of medication she does not do as well.
>
> I last saw Ms. Ledbetter in February 2008 approximately 2 ½ years following her surgery. She still had low back discomfort requiring narcotics, Lyrica and Cymbalta. X-rays showed good alignment of her surgical hardware and no further disc degenerati[on] so we did not see any further surgical options for her. Based on my review of her family doctor's records, Ms. Ledbetter continues to have significant low back pain, and that is consistent with her clinical history. When there is a history of nerve root compression there may be some changes inside the nerve that are just not amenable to surgical decompression. In about 30% of patients there is not complete relief of pain even after surgical decompression, and that appears to be the case with Ms. Ledbetter based on my review of her family doctor's notes. Her complaints of continued low back pain are consistent with her clinical history.
>
> I do not think Ms. Ledbetter would be employable. Her primary problem with working would be interruptions to concentration. If she does not take her medications she would suffer interruptions to her concentration sufficient to frequently interrupt tasks throughout the work day due to her low back pain. However, all of her medications listed above have known side effects of causing difficulty with concentration. Therefore, it is most probable that the side effects of her medications would cause her interruptions to concentration sufficient to frequently interrupt tasks

>     throughout the work day. Taking that much medication would make it difficult for her to be a reliable employee. She would not be able to either sit or stand for prolonged periods of time due to her back pain, but it is difficult for me to assess this limitation more exactly since I have not seen her recently. It is consistent with her condition that even at a sedentary job she would need to stand up and walk around from about 5-10 minutes every hour. But again, her main problem with working would be her difficulty with concentration due to the side effects of her medications. It is most probable that she has had these limitations at least since the time of her surgery in 2005, with a brief period of improvement just following her surgery.

(R. at 253.)

The ALJ reiterated, numerous times, that he gave "little weight" to Dr. Flandry's opinions.

(See R. at 25-27.) The ALJ stated, *inter alia*,

>     Dr. Flandry's opinion that the claimant is not employable is an administrative finding and I cannot assign it controlling weight or special significance, but I have considered whether the record supports the opinion. Dr. Flandry did not provide a reasonable basis for the opinion because as explained below, findings during his course of treatment do not support the conclusion. The opinion is also not consistent with the remainder of the evidence, ***including evidence from other treatment sources***.

(R. at 25 (emphasis added).)[2]

The ALJ also gave "little weight" to the opinions of Dr. Madison, Plaintiff's treating family practice physician. (See R. at 26-27.) Dr. Madison completed a questionnaire regarding Plaintiff on July 17, 2012. (R. at 283-84.) Dr. Madison indicated that if Plaintiff attempted to work an eight hour day, five days per week, she would need to rest away from her work station for more than one hour per day to rest her back. (R. at 283.) Dr. Madison also opined that due to pain in her low back with sciatica, Plaintiff would miss at least three days per month. (R. at 283.) When asked if Plaintiff would have problems with attention to and concentration sufficient to frequently interrupt tasks during the working portion of the work day, Dr. Madison indicated yes, that the Plaintiff's pain level would be "distracting." (R. at 283.) He further opined that Plaintiff had been so impaired since her surgery in 2005 and that she had not been able to work since. (R. at 284.)

---

[2]Dr. Madison's opinion is the only other opinion from a treating source, and his opinion does not appear to be inconsistent with that of Dr. Flandry.

The ALJ stated that he "cannot assign controlling weight to Dr. Madison's opinion" because his "opinion is . . . not 'well-supported' by medically acceptable clinical and laboratory diagnostic techniques and is inconsistent with the other substantial evidence in the record." (R. at 27.) The ALJ stated,

> Other than stating that the pain level would be distracting, he offered no basis for his opinion that she would probably have to rest her back for more than one hour per day and would probably have to miss at least three days of work per month due to low back pain with sciatica. He also offered nothing more specific than a distracting pain level for his opinion that she would probably have problems with attention to and concentration sufficient to interrupt tasks frequently during the workday.
>
> Applying the factors for weighing non-controlling treating source medical opinions, I assign little weight to Dr. Madison's opinions.
>
> Dr. Madison is not a specialist in orthopedics, neurosurgery or psychiatry. His office notes do not reveal complaints of side effects of medication or of difficulty with concentration secondary to pain or medications. He offered only conservative treatment and apparently did not consider the pain severe enough to warrant referral to specialists or to require an increase in the dose and type of pain medication.

(R. at 27.)

The ALJ also gave "little weight to DDS opinions" because "[i]nitially and on reconsideration, DDS found insufficient evidence to evaluate mental and physical impairments for the period at issue (Exhibits 2A, 6A)." (R. at 21.) The ALJ assigned these opinions "little weight" because "a finding of insufficient evidence is not appropriate at the hearing level." (Id.) There are only two medical opinions in the instant record, as no state consultant or examiner provided an opinion.

Residual Functional Capacity is "the most [a claimant] can still do despite [his or her] limitations. 20 C.F.R. § 404.1545(a)(1); see also SSR 96-8p, 1996 WL 374184, at *2 ("Ordinarily, RFC is the individual's *maximum* remaining ability to do sustained work activities in an ordinary work setting on a **regular and continuing basis**, and the RFC assessment must include a discussion of the individual's abilities on that basis. A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule. RFC does not represent the *least* an individual can

7

do despite his or her limitations or restrictions, but the *most*." (emphases in original)). The regulations provide that the Commissioner "will assess . . . residual functional capacity based on all the relevant evidence in [a] case record." 20 C.F.R. § 404.1545(a)(1). The regulations further provide,

> We will assess your residual functional capacity based on all of the relevant medical and other evidence. In general, you are responsible for providing the evidence we will use to make a finding about your residual functional capacity. (See § 404.1512(c).) However, before we make a determination that you are not disabled, we are responsible for developing your complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help you get medical reports from your own medical sources. (See §§ 404.1512(d) through (f).) We will consider any statements about what you can still do that have been provided by medical sources, whether or not they are based on formal medical examinations. (See § 404.1513.) We will also consider descriptions and observations of your limitations from your impairment(s), including limitations that result from your symptoms, such as pain, provided by you, your family, neighbors, friends, or other persons. (See paragraph (e) of this section and § 404.1529.)

20 C.F.R. § 404.1545(a)(3). Social Security Ruling 96-8p requires an ALJ to reference the evidence supporting his conclusions with respect to a claimant's residual functional capacity. See SSR 96-8p, 1996 WL 374184, at *7.

The undersigned has reviewed the record in this case numerous times. And although the ALJ wrote a detailed opinion, what stands out in this case is the lack of ***any*** accepted medical opinion. The ALJ gave "little weight" to the DDS opinions, "little weight" to Dr. Flandry's opinions, and "little weight" to Dr. Madison's opinions. (See R. at 21-28.) The question then becomes: upon what exactly did the ALJ base his RFC findings? The ALJ does state that, "[c]onsidering all the evidence, I find that on or before December 31, 2010, claimant's daily activities were consistent with a capacity for light exertion with the additional limitations I have set forth." (R. at 23.) Respectfully, however, the evidence in the record of Plaintiff's daily activities does not support a finding that Plaintiff is capable

8

of "standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." SSR 83-10, 1983 WL 31251 at *6.[3]

Although the Commissioner reserves the right to decide certain issues, such as a plaintiff's RFC, see 20 C.F.R. § 404.1527(d), ALJs are "cautioned . . . against relying on their own expertise in drawing RFC conclusions from raw medical data." Smiley v. Comm'r, 940 F. Supp. 2d 592, 600-01 (S.D. Ohio 2013) (citations omitted). As in Smiley, the record in the case *sub judice* "does not contain *a single opinion* from *any medical source* that indicates Plaintiff is functionally capable" of performing light work. Id. at 601 (emphasis added). Nor do Plaintiff's daily activities support such a conclusion. (See n.3.) The undersigned is unable, on this record, to conclude that the Commissioner's decision is supported by substantial evidence. See Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) ("The Commissioner suggests that despite Dr. Mahoney's opinion, the medical record supported the ALJ's determination that claimant was fully capable of performing sedentary work. As a lay person, however, the ALJ was simply not qualified to interpret raw medical data in functional terms and no medical opinion supported the determination."); see also Arnold v. Colvin, Civ. A. No. 3:12-CV-02417, 2014 WL 940205, at *4-5 (M.D. Pa. Mar. 11, 2014) ("'Even though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination based on those administrative definitions and is reserved to the Commissioner. However, the underlying determination is a medical determination, i.e., that the claimant can lift five, 20, 50, or 100 pounds, and can stand for 30 minutes, two hours, six hours, or eight hours. That determination must be made by a doctor. Once the doctor has determined how long the claimant can sit, stand or walk, and how much weight the claimant can lift and carry, then the ALJ, with the aid of a vocational expert if necessary, can translate that medical determination into a residual functional

---

[3]The ALJ noted that Plaintiff "described a limited range and extent of daily activities in her testimony." (R. at 23; see also R. at 42-43, 45, 48-50.) The ALJ apparently rejected this evidence, however, given that Plaintiff "told Dr. Flandry and Dr. Madison in 2007, twice in 2008 and in 2010 that she functioned fairly well with medications." (Id.) The undersigned fails to ascertain how Plaintiff's reports that she "functioned fairly well with medications" indicates that Plaintiff is capable of performing light work on a regular and continuing basis, especially in light of the evidence that Plaintiff's pain increased with mobility. (See, e.g., R. at 207, 209.)

capacity determination.'" (quoting Carolyn A. Kubitschek & Jon C. Dubin, Social Security Disability Law and Procedure in Federal Courts, 344-345 (2014))); Nicholson v. Astrue, Civ. A. No. 1:09cv271, 2010 WL 4506997, at *6 (W.D.N.C. Oct. 29, 2010) ("In the absence of any accepted source opinion expressing Plaintiff's limitations in the form of residual functional capacity, the ALJ's findings about RFC could only have resulted from his own unqualified lay opinion."); Jackson v. Astrue, Civ. A. No. 8:08-2855-JFA-BHH, 2010 WL 500449, at *7 (D.S.C. Feb. 5, 2010) (citations omitted). The undersigned therefore recommends a remand.

### B.    Remaining Claims of Error

Because the Court finds the ALJ's determination of Plaintiff's residual functional capacity is not based upon substantial evidence, the undersigned recommends remanding the case to the Commissioner. The Court declines to specifically address Plaintiff's claims of error, but upon remand, the Commissioner should take such claims of error into consideration.

### CONCLUSION AND RECOMMENDATION

Wherefore, based upon the foregoing, the Court recommends that the Commissioner's decision be reversed and remanded for administrative action consistent with this recommendation, pursuant to sentence four of 42 U.S.C. Section 405(g) for further proceedings as set forth above.

IT IS SO RECOMMENDED.

_____
MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE

July 30, 2015
Charleston, South Carolina

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).